IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | CHAPTER 15 |
| GRANT FOREST PRODUCTS INC., *et al.*,[1] | |
| Debtors in Foreign Proceedings. | Case No. 10-11132<br>Joint Administration Pending |

**DECLARATION OF PETER LYNCH IN SUPPORT OF (I) MONITOR'S MOTION FOR ENTRY OF AN ORDER GRANTING RECOGNITION AND RELIEF IN AID OF FOREIGN MAIN PROCEEDING PURSUANT TO 11 U.S.C. §§ 1515, 1517 AND 1520; (II) MONITOR'S MOTION FOR JOINT ADMINISTRATION; AND (III) MONITOR'S MOTION FOR *EX PARTE* EMERGENCY RELIEF AND PROVISIONAL RELIEF PURSUANT TO 11 U.S.C. §§ 105(A), 1519, AND 1521**

I, **Peter Lynch**, hereby declare as follows:

1. I am the Executive Vice President of Grant Forest Products Inc. ("**Grant Forest**"). I am authorized by Grant Forest, Grant Forest Products Sales Inc., Grant Alberta Inc., Grant U.S. Holdings GP, Southeast Properties LLC, Grant Clarendon LP, Grant Allendale LP, Grant US Sales Inc., Grant Newco LLC, and Grant Excluded GP (collectively, the "**Debtors**") to make this Declaration.

2. I submit this Declaration in support of (I) *Monitor's Motion for Entry of an Order Granting Recognition and Relief in Aid of Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1515, 1517, and 1520;* (II) *Monitor's Motion for Joint Administration; and* (III) *Monitor's Motion for Ex Parte Emergency Relief and Provisional Relief Pursuant to 11 U.S.C. §§ 105(a), 1519 and 1521* (collectively, "**First Day Pleadings**").

---

[1] The proposed jointly administered cases are those of the following debtors: Grant Forest Products Inc., Grant Forest Products Sales Inc., Grant Alberta Inc., Grant U.S. Holdings GP, Southeast Properties LLC, Grant Clarendon LP, Grant Allendale LP, Grant US Sales Inc., Grant Newco LLC, and Grant Excluded GP.

3. I am an individual over the age of 18 and, if called upon, would testify to all matters set forth in this Declaration. Except as otherwise indicated, all facts set forth in this Declaration in support of the Debtors' petitions under chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") and the First Day Pleadings are based upon my personal knowledge, information supplied to me by other members of the Debtors' management and professionals, or learned from my review of relevant documents or upon my opinion based upon my experience and knowledge of the Debtors' industry, operations, and financial condition. If called upon to testify, I could and would testify competently to the facts set forth herein.

**Debtors' Corporate Structure**

4. The applicable Debtors are a leading manufacturer of oriented strand board ("**OSB**"). The applicable Debtors manufacture OSB in panels of varying lengths and thickness, as well as specialty products such as web stock, rim board and oversized panels.

5. The applicable Debtors own four mills used to produce OSB and other wood products, two of which are located in Canada at Englehart, Ontario ("**Englehart Mill**") and Timmins, Ontario ("**Timmins Mill**"), and two of which are located in the United States at Allendale, South Carolina ("**Allendale Mill**") and at Clarendon, South Carolina ("**Clarendon Mill**")[2]. Grant Forest also owns 50% of a fifth OSB mill located at High Level, Alberta, Canada ("**Alberta Mill**"). With a total capacity to produce 3.7 billion square feet of OSB per annum, the applicable Debtors have the capacity to be the third largest OSB producer in North America.

6. Grant Forest is a privately owned corporation, organized under Ontario laws, that serves as the Debtors' main operating company. Grant Forest owns among other things the

---

[2] The Clarendon Mill is a new mill with construction substantially complete; however, due to current market conditions, Debtors have not brought the Clarendon Mill online.

Englehart Mill, the Timmins Mill, 50% of the Alberta Mill,[3] remanufacturing and coated wood products facilities at Earlton, Ontario, various woodlots and other real estate, and a golf course.

7. Grant Forest additionally holds the following subsidiary equity interests:

    (a) a 99.99% partnership interest in Grant U.S. Holdings GP ("**Grant Holdings**"), which is organized under Delaware law;

    (b) 100% of the ownership interest in Grant Alberta Inc. ("**Alberta**"), organized under Alberta law that, in turn, holds the remaining .01% partnership interest in Grant Holdings as its only asset; and

    (c) 100% of the ownership interest in Grant Forest Product Sales Inc. ("**Grant Sales**"), organized under Ontario law that sells the OSB produced from the Canadian mills.

8. Grant Holdings is a Delaware partnership, controlled and owned by Grant Forest and Alberta. Grant Holdings holds the membership interests of Southeast Properties LLC ("**Southeast**"), a Delaware limited liability company, and preferred limited partnership interests in Grant Allendale LP ("**Allendale LP**") and Grant Clarendon LP ("**Clarendon LP**"), both Delaware limited partnerships.

9. Allendale LP and Clarendon LP own the Allendale Mill and Clarendon Mill, respectively.

10. Southeast holds 100% of the membership interests in Grant Newco LLC ("**Newco**"), a Delaware limited liability company. Southeast additionally holds limited partnership interests in Clarendon LP and Allendale LP. Finally, Southeast holds 100% of the ownership interest in a Delaware corporation, Grant US Sales Inc. ("**US Sales**"). US Sales is responsible for selling the materials produced at the Allendale Mill.

11. Newco holds the general partnership interests in Clarendon LP and Allendale LP. Thus, the ownership of Clarendon LP and Allendale LP is summarized as follows: Grant

---

[3] Title to the Alberta Mill is held by Footner Forest Products, LTD, and Grant Forest owns 50% of the shares of Footner Forest Products Ltd.

Holdings holds preferred limited partnership interests; Southeast holds limited partnership interests; and Newco is the general partner of each entity. Allendale LP and Clarendon LP are each general partners of a Delaware partnership, Grant Excluded GP ("**Excluded**", and together with US Sales, Newco, Clarendon LP, Allendale LP, and Southeast, the "**Additional Applicants**", and with Grant Holdings, the "**U.S. Applicants**"). Each Additional Applicant holds a bank account in Ontario, Canada. The only other material assets of Excluded consist of unsecured obligations owing by other Additional Applicants to Excluded.

12. Attached hereto as **Exhibit A** and incorporated by reference is an organizational chart showing the Debtors' corporate structure.

### Debtors' Operations and Management

13. The applicable Debtors operate a fully integrated OSB manufacturing and sales business. The OSB produced by the Allendale Mill and sold by US Sales is labeled in the same manner to the materials produced by the operating Canadian mill with a prominent Grant "G" logo and distinctive red edge seal or product coating.

14. Grant Forest, founded in 1980 by Peter Grant Sr., ultimately owns the equity interests in all of the Debtors. Grant Forest's head office is located in Brookfield Place, Toronto ("**Canadian Headquarters**"). Grant Forest additionally maintains administrative offices in Earlton, Ontario, and an IT support office in Mississauga, Ontario. Through a series of holding companies, the ultimate shareholders of Grant Forest – Peter Grant, Sr., and Twin Lakes Trust, a Grant family trust – are Canadian.

15. A number of the members of the boards of directors, boards of management, and officers are common among the Debtors, including myself and Peter Grant Jr., who both reside in Canada. All of the directors of Grant Forest are Canadian. Resolutions by the boards of

directors of the Debtors are historically passed by written resolution. Moreover, formal meetings by the boards of directors for the Additional Applicants have not occurred in the United States for several years.

16.   The principal financial records and books are maintained in the Canadian Headquarters. The directing minds of the Debtors also are also located at the Canadian Headquarters. All major budgeting, financial, marketing, sales, and overall strategy decisions for the Debtors are made in or monitored from the Canadian Headquarters. In addition, all treasury, cash management, and banking arrangements for the Debtors are coordinated from the Canadian Headquarters. Finally, all major human resources decisions, including compensation and benefits for all officers and senior management of the Debtors, are made from the Canadian Headquarters.

### Debtors' Debt Structure

17.   Grant Forest, Grant Sales, Alberta and Grant Holdings are obligated as borrowers or guarantors under two collective levels of primary secured debt ("**First Lien Debt**" and "**Second Lien Debt**"). The First Lien Debt holders ("**First Lien Lenders**") are represented by their agents, The Toronto-Dominion Bank and a related entity, Toronto-Dominion (Texas) LLC ("**First Lien Lenders' Agent**"). The Bank of New York Mellon ("**Second Lien Lenders' Agent**") now serves as the agent for the Second Lien Debt holders ("**Second Lien Lenders**").[4] The majority of the principal amount owing under the First Lien Debt is held by Canadian lenders. Grant Forest and Grant Holdings are the primary borrowers under the First Lien Debt. Grant Holdings is the primary borrower under the Second Lien Debt. Grant Sales, Alberta, and

---

[4] The Toronto-Dominion Bank and a related entity, Toronto-Dominion (Texas) LLC were originally the agents for the Second Lien Lenders but, before the commencement of the CCAA Proceeding, resigned that position and transferred their interests in respect thereto to The Bank of New York Mellon as the replacement agent for the Second Lien Lenders.

the Additional Applicants (with the exception of Excluded) are guarantors of the First Lien Debt and the Second Lien Debt. Grant Forest is an additional guarantor of the Second Lien Debt.

### Events Leading to CCAA Proceeding

18. The demand for OSB has decreased contemporaneous with the general decline in the construction industry and the building materials market. As a result of current conditions, the Debtors are currently operating only the Allendale Mill in the United States and the Englehart Mill in Canada. The Timmins Mill and Alberta Mill are idle. The Clarendon Mill is a new mill with construction substantially complete; however, due to current market conditions, Debtors have not brought the Clarendon Mill online.

19. The recent economic slump and high costs related to the Debtors' acquisition and construction of the Clarendon Mill and Allendale Mill have strained the Debtors' financial health. The Debtors are in default of their obligations under the documents governing the First Lien Debt and the Second Lien Debt. As of May 2009, the First Lien Lenders were owed approximately $398 million in principal, plus interest, and the Second Lien Lenders were owed approximately $150 million in principal, plus interest.

### CCAA Proceeding

20. On June 23, 2009, certain of the Debtors served a notice of motion for protection ("**CCAA Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), before the Ontario Superior Court of Justice (Commercial List) (the "**CCAA Court**").

21. By order entered on June 25, 2009 ("**Initial Order**"), the CCAA Court appointed Ernst & Young Inc. ("**E&Y**") as monitor (the "**Monitor**") for Grant Forest, Alberta, Grant

Holdings, and Grant Sales. A true and correct copy of the Initial Order is attached to the Morrison Declaration as Exhibit A.

22. In addition, the Initial Order provided that the Debtors would engage an investment offering advisor ("**Investment Offering Advisor**") to commence a marketing process ("**Marketing Process**") to provide interested parties with the opportunity to offer to purchase the business and operations of certain of the Debtors.

23. The Debtors appointed E&Y to serve as the Investment Offering Advisor. Thereafter, E&Y undertook the role of the Investment Offering Adviser to assist and oversee the Marketing Process.

24. On January 15, 2010, the First Lien Lenders' Agent applied to the CCAA Court to add the Additional Applicants as parties to the CCAA Proceeding. On March 31, 2010, the CCAA Court issued an order adding the Additional Applicants to the CCAA Proceeding ("**Supplemental Initial Order**" and collectively with the Initial Order, "**CCAA Orders**"). A true and correct copy of the Supplemental Initial Order is attached to the Morrison Declaration as Exhibit B.

### Proposed Sale

25. Pursuant to the Marketing Process, as approved by the CCAA Court, certain of the Debtors engaged the Investment Offering Advisor to market the businesses of the Debtors. After extensive marketing efforts, the applicable Debtors received several proposals to purchase the businesses of the Debtors (and/or parts thereof).

26. As set forth in more detail in the *Monitor's Motion Pursuant to Sections 363, 1501, 1507, 1520, 1521, and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002, and 6004 for an Order (a) Affirming and Enforcing the Order of the CCAA Court Approving the Sale of Certain Assets and Such Other Related Relief and (b) Separately, (i) Authorizing and*

*Approving the Sale of Assets and (ii) Granting Other Related and Further Relief*, Debtors have accepted an offer by Georgia-Pacific LLC and certain of its subsidiaries (collectively, "**Georgia-Pacific**") to purchase certain of the Debtors' businesses ("**Proposed Sale**").

27.     The proposed transaction is memorialized in an agreement dated January 8, 2010. Georgia-Pacific will purchase certain of the assets of Grant Forest, Alberta and Grant Sales,[5] and will engage in a transaction that ultimately results in Georgia-Pacific owning all of the partnership interests in Grant Holdings and, thus, the equity in the Additional Applicants. By acquiring the partnership interests in Grant Holdings, Georgia-Pacific intends for the business of the Additional Applicants to continue as usual, with as little disruption as possible. With the exception of the liens and claims of the First Lien Lenders' Agent, the First Lien Lenders, the Second Lien Lenders' Agent, the Second Lien Lenders, and certain claims owing to affiliates of Grant Forest, the claims of the other creditors of the U.S. Applicants, other than claims owing by Grant Holdings,[6] will not be compromised, reduced or adversely affected simply as a result of the Proposed Sale. On March 30, 2010, the CCAA issued its Reasons for Decisions approving the Proposed Sale ("**Reasons for Decisions**"). A true and correct copy of the Reasons for Decisions is attached hereto as **Exhibit B**.[7] On March 31, 2010, the CCAA Court approved the transaction ("**Canadian Sale Approval Order**"). A true and correct copy of the Canadian Sale Approval Order is attached to the Morrison Declaration as Exhibit C.

28.     As explained more fully in the *Monitor's Motion for Entry of an Order Granting Recognition and Relief in aid of Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1515,*

---

[5] Georgia-Pacific will not acquire certain excluded assets, including, without limitation, the Timmins Mill, the shares of Footner Forest Products Ltd., the Non-Core Assets (as defined in the Agreement), cash on closing, income tax refunds, and certain other assets as described more fully in the Agreement.

[6] Pursuant to the Canadian Order, all liens, claims and encumbrances against Grant Holdings' partnership interests, which are being purchased by Georgia-Pacific, were released, discharged and expunged. Upon information and belief, the Monitor and the Debtors believe that the only creditors of Grant Holdings were the First Lien Lenders' Agent, the First Lien Lenders, the Second Lien Lenders' Agent, the Second Lien Lenders, and certain affiliates of Grant Forest.

[7] A certified copy of the Reasons for Decisions will be provided to the Court to supplement this declaration.

*1517, and 1520*, recognition is important to ensure that the Proposed Sale is consummated, and the provisions contained therein are given effect under domestic laws.

29. As the success of the CCAA Proceeding depends on the Debtors' ability to adopt a unified plan covering the claims of all creditors, the threat of disruption of the reorganization process as well as the legal cost of defending such actions, may have a severe and adverse impact on any change of a successful reorganization in the CCAA Proceeding, causing irreparable harm to the Debtors and other interested parties. More specifically, recognition of the CCAA Proceeding, ensuring the Proposed Sale is consummated, affords the opportunity to effectively reorganize across international borders, thereby maximizing the value of the enterprise for the benefit of stakeholders in multiple jurisdictions.

### **Chapter 15 Cases**

30. To the best of my information and belief, the CCAA Proceeding is a collective judicial proceeding in Canada under Canadian law relating to insolvency or the adjustment of debt in which the assets and affairs of the Debtors are subject to the control and supervision of the CCAA Court for the purpose of reorganization or liquidation. Accordingly, I believe the CCAA Proceeding is a "foreign proceeding" within the meaning of 11 U.S.C. § 101(23).

31. To the best of my information and belief, other than these cases, the CCAA Proceeding is the only insolvency proceeding of any kind pending for the Debtors and this is the only "foreign proceeding" with respect to the Debtors within the meaning of 11 U.S.C. § 101(23).

32. To the best of my information and belief, the CCAA Proceeding is a "foreign main proceeding" within the meaning of 11 U.S.C. §§ 1502(4) and 1517(b)(1) of Bankruptcy Code, because the Debtors collectively have their center of main interest in Canada. All of the

Debtors' principal corporate, management, banking, and strategic functions are undertaken in Canada. Specifically:

(a) Grant Forest, the ultimate equity holder of all of the Debtors, is incorporated under Canadian laws, has its headquarters located in Canada, maintains additional offices in Canada, and itself is owned in whole by persons or entities residing in Canada.

(b) Likewise, Alberta, the other entity with a partnership interest in Grant Holdings, is located in Canada.

(c) A number of the members of the boards of directors, management, and officers are common among the Debtors, including Peter Lynch and Peter Grant, Jr., both of whom reside in Canada.

(d) All of the directors of Grant Forest, the ultimate parent company, are Canadian.

(e) The principal records and books of the Debtors are maintained in Canada.

(f) The directing minds are located in Canada, and all major budgeting, financial, marketing, sales, and overall strategy decisions are made in Canada. Similarly, treasury, cash management, and banking arrangements are coordinated from Canada. Finally, major human resources decisions are made from Canada.

(g) I understand that the majority of the principal amount owing under the First Lien Debt is held by Canadian lenders.

(h) The products made in the United States are labeled with a prominent Grant "G" logo and distinctive red edge seal or product coating, the same branding established by Grant Forest for its Canadian products.

(i) Grant Forest and Grant Holdings are borrowers of the First Lien Debt, Grant Holdings is the borrower of the Second Lien Debt, and all of the other Debtors except Excluded are guarantors of the First Lien Debt and the Second Lien Debt.

(j) I understand that the majority of Debtors' contracts, including the documents for the First Lien Debt and the Second Lien Debt were negotiated in Canada. The First Lien Debt documents provide that Canadian law applies.

33. To the best of my information and belief, E&Y is also a foreign representative within the meaning of 11 U.S.C. §§ 101(24) and 1517. In fact, both the Initial Order and the Supplemental Initial Order expressly authorize E&Y, in its capacity as Monitor, to file these chapter 15 cases on behalf of the Debtors.

34.     Accordingly, Debtors filed chapter 15 petitions in this Court, which sits in the jurisdiction where the Additional Debtors are organized.  Grant Holdings is a Delaware partnership, which holds the membership interests of Southeast, a Delaware limited liability company, and preferred limited partnership interests in Allendale LP and Clarendon LP, both Delaware limited partnerships.  In addition, Southeast holds 100% of the equity interest in US Sales, a Delaware corporation.

35.     To forestall possible irreparable harm, the Debtors seek to give effect to the Initial Order, Supplemental Initial Order, and Canadian Sale Approval Order in the United States on both an interim and final basis.  Specifically, the Debtors seek recognition of the CCAA Proceeding as a "foreign main proceeding" for the purposes of granting full recognition of the Initial Order, Supplemental Initial Order, and Canadian Sale Approval Order.

36.     Recognition of the CCAA Proceeding will best assure an economical, expeditious, and equitable administration of the Debtors' restructuring.

37.     To ensure the Debtors' continued operation during its restructuring process, the Debtors also urgently require this Court's recognition or approval of the terms of the Proposed Sale.

38.     The relief requested in these Debtors' chapter 15 cases is therefore well justified under the circumstances.

**Provisional Relief**

39.     As explained more fully in *Monitor's Motion for Ex Parte Emergency Relief and Provisional Relief Pursuant to 11 U.S.C. §§ 105(a), 1519, and 1521*, absent preliminary relief under section 1519 of the Bankruptcy Code, pending the Court's determinations with respect to recognition of the CCAA Proceeding as a "foreign main proceeding," creditors may seek a

tactical advantage through unilateral action, including acceleration of efforts to commence litigation, attachment or other legal process in whatever U.S. jurisdiction a creditor may choose.

40. The threat of creditor action is real. Without the court granting a stay of actions against Debtors' assets located in the United States, creditors may attempt enforcement proceedings outside the territorial reach of the Orders of the CCAA Court.

41. The creditors' enforcement actions against the Debtors in the United States would disrupt the Debtors' reorganization and jeopardize the Proposed Sale, which is central to the Debtors' restructuring.

42. Even the threat of commencement or continuation of an enforcement action against the Debtors could negatively impact the Debtors' businesses and the Proposed Sale.

43. Further, key suppliers may take the position that the commencement of the CCAA Proceeding or the chapter 15 cases authorizes them to terminate their agreements, and executory contract counterparties or lessors may attempt to enforce contract or lease provisions of the type described in section 365(e) of the Bankruptcy Code. Such actions could impair the value of the Debtors' U.S. assets, imperil the Debtors' businesses and jeopardize the Proposed Sale.

44. Ultimately, the Debtors require immediate protection in the United States, consistent with the relief provided for in the Initial Order and Supplemental Initial Order, to prevent suppliers, creditors and other stakeholders from taking steps to disrupt the Debtors' operations, potentially depleting their estates to the detriment of all stakeholders, and irreparably jeopardizing the Debtors' ongoing efforts to restructure.

45. Preliminary relief would enable an orderly process in the Debtors' chapter 15 cases between the Petition Date and this Court's determination of whether to recognize the CCAA Proceeding. Without preliminary relief, the Debtors will be irreparably harmed because

the resulting uncertainty would destabilize the Debtors' businesses and endanger the Proposed Sale.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 31, 2010.

Peter Lynch
Executive Vice President
Grant Forest Products Inc.