# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | CHAPTER 15 |
| GRANT FOREST PRODUCTS INC., *et al.*,[1] | Case No. 10-11132<br>Jointly Administered |
| Debtors in Foreign Proceedings. | **Re: Docket No. 11** |

### ORDER PURSUANT TO SECTIONS 363, 1501, 1507, 1520, 1521, AND 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, AND 6004 FOR AN ORDER (A) AFFIRMING AND ENFORCING THE ORDER OF THE CANADIAN COURT APPROVING THE SALE OF CERTAIN ASSETS AND SUCH OTHER RELATED RELIEF AND (B) SEPARATELY, (i) AUTHORIZING AND APPROVING THE SALE OF ASSETS AND (ii) GRANTING OTHER RELATED AND FURTHER RELIEF

This matter having come before the Court upon the motion (the "**Motion**") of Ernst & Young Inc. ("**E&Y**"), in its capacity as the court-appointed monitor (the "**Monitor**") and authorized foreign representative of Grant Forest Products Inc., Grant Forest Products Sales Inc., Grant Alberta Inc., Grant U.S. Holdings GP, Southeast Properties LLC, Grant Clarendon LP, Grant Allendale LP, Grant US Sales Inc., Grant Newco LLC, and Grant Excluded GP (collectively, the "**Debtors**") pursuant to Sections 363, 1501, 1507, 1520, 1521, and 105(a) of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for an order (A) Affirming and Enforcing the Approval and Vesting Order (the "**Canadian Order**") of the Ontario Superior Court of Justice (the "**CCAA Court**") Approving the Vendors' Sale of Certain Assets Free and Clear of Liens, Claims and Encumbrances and Other Related and Further Relief and (B) Separately Authorizing and Approving the Vendors' Sale and Transfer of Assets Free and Clear of Certain Liens, Claims and Encumbrances and Such Other Related and Further Relief. Adequate notice of the Motion was given. Capitalized terms not

---

[1] The proposed jointly administered cases are those of the following debtors: Grant Forest Products Inc., Grant Forest Products Sales Inc., Grant Alberta Inc., Grant U.S. Holdings GP, Southeast Properties LLC, Grant Clarendon LP, Grant Allendale LP, Grant US Sales Inc., Grant Newco LLC, and Grant Excluded GP.

otherwise defined herein, shall have the meaning affixed to them in the Motion and that certain Purchase Agreement between the Debtors and Georgia-Pacific LLC, GP International Acquisition III, Ltd., and GP Palmetto Holding LLC dated 8 January 2010 and all Schedules, Disclosure Schedules, and Exhibits attached thereto (collectively, the "**Agreement**"). The Court has considered and reviewed the Motion, including the Canadian Order, and other documents, and releases attached thereto. No objections to the Motion were received. Therefore, it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and parties in interest; and upon the record at the Sale Hearing to be defined in the Motion, including the decision of the CCAA Court approving the Canadian Order, and after due deliberation and good and sufficient cause appearing therefor,

IT IS HEREBY FURTHER FOUND AND DETERMINED AS FOLLOWS:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall later be determined to be a conclusion of law it shall be so deemed and vice versa.

B.     The Debtors are parties in a proceeding (the "**CCAA Proceeding**") under the Companies' Creditors Arrangement Act (Canada) (the "**CCAA**") before the CCAA Court.

C.     Pursuant to an order of the CCAA Court dated June 25, 2009 (the "**Initial Order**"), E&Y was appointed as Monitor for certain of the Debtors in the CCAA Proceeding.

D.     Among other things, the Initial Order provided that the Debtors would engage an investment offering advisor (the "**Investment Offering Advisor**") to commence a marketing process (the "**Marketing Process**") to provide interested parties with the opportunity to offer to purchase the business and operations of certain of the Debtors.

E.     The Debtors appointed E&Y to serve as the Investment Offering Advisor.

2

F.     Thereafter, E&Y undertook the role of the Investment Offering Adviser to assist and oversee the Marketing Process.

G.     In accordance with the Initial Order, E&Y and certain of the Debtors (i) sought expressions of interest from interested parties and parties that might be interested in purchasing certain of the Debtors' assets, (ii) received expressions of interest from numerous parties, (iii) provided due diligence materials to interested parties, (iv) provided interested parties with access to the Debtors' assets and management, (v) established an independent committee consisting of certain members from Grant Forest Product Inc.'s Board of Directors (vi) conferred with the First Lien Lenders' Agent, (vii) invited interested parties to submit initial proposals to acquire some or all of the Debtors' assets, (viii) evaluated the initial proposals received, (ix) requested revised proposals, (x) reviewed and analyzed the revised proposals, (xi) determined that the proposal submitted by the Purchasers represented the highest and best bid for the Debtors' assets, and (xii) negotiated the terms of the Agreement to facilitate the sale, issuance, transfer, and acquisition of the Acquired Interests with the Purchasers.

H.     The Marketing Process conducted by certain of the Debtors, E&Y, and their advisors in the CCAA Proceeding, in accordance with the Initial Order, was adequate and reasonable to obtain the highest and best value for the Acquired Interests and to maximize the value to the Debtors of all of their assets.

I.     The applicable Applicants are in default under the First Lien Credit Agreement and the Second Lien Credit Agreement.

J.     The First Lien Lenders' Agent, acting on its behalf and on behalf of the First Lien Lenders, is entitled to exercise the rights and remedies provided for under the Intercreditor Agreement, including, without limitation, the power of attorney to execute the

3

Release and Discharge Agreement on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders pursuant to the Intercreditor Agreement.

K.     Pursuant to that certain Consent Agreement dated as of January 8, 2010 (the "**Consent Agreement**"), the First Lien Lenders' Agent has, in an exercise of its remedial power pursuant to the Intercreditor Agreement, agreed to, among other things: (i) support the consummation of the transaction contemplated by the Purchase Agreement; (ii) effective upon Closing, release its liens, claims and other encumbrances on the Collateral; and (iii) effective upon Closing, discharge and release certain Obligations of the Borrowers and the Guarantors under the First Lien Credit Agreement.

L.     On January 15, 2010, in an exercise of its enforcement remedies under the First Lien Credit Agreement and the Intercreditor Agreement, and in accordance with the Consent Agreement, the First Lien Lenders' Agent applied to the CCAA Court to add Southeast Properties LLC, Grant Clarendon LP, Grant Allendale LP, Grant US Sales Inc., Grant Newco LLC, and Grant Excluded GP (together, with Grant U.S. Holdings GP, the "*U.S. Applicants*") as parties in the CCAA Proceeding.

M.     On March 31, 2010, the CCAA Court made such order as a result of which the foregoing entities are now applicants in the CCAA Proceeding.

N.     On March 30, 2010, the CCAA issued its Reasons for Decisions approving the Proposed Sale ("**Reasons for Decisions**").

O.     On March 31, 2010, the CCAA Court made the Canadian Order, dated March 30, 2010, wherein, the CCAA Court, among other things: (i) approved the Agreement, the Release Agreement, and the Release and Discharge Agreement and the Debtors' entry into such agreements; (ii) authorized and directed the Debtors to take the steps necessary to complete the transactions contemplated by the Agreement, the Release Agreement, and the Release and Discharge Agreement, including, without limitation, granting the necessary

4

authority to approve the foregoing; (iii) approved of the entry into the Release and Discharge Agreement as provided for in the Intercreditor Agreement by (a) the First Lien Lenders' Agent (on behalf of itself and the First Lien Lenders), (b) the First Lien Lenders' Agent (on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders, pursuant to the Intercreditor Agreement) and (c) the Second Lien Lenders' Agent (on behalf of itself and the Second Lien Lenders); (iv) authorized, empowered, and directed (a) the First Lien Lenders' Agent (on behalf of itself and the First Lien Lenders), (b) the First Lien Lenders' Agent (on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders, pursuant to the Intercreditor Agreement), and (c) the Second Lien Lenders' Agent (on behalf of itself and the Second Lien Lenders) to take the steps necessary to complete the transactions contemplated by the Release and Discharge Agreement, including without limitation, directing the release and discharge of the First and Second Lien Lenders' Liability and all Liens of the First Lien Lenders' Agent, the First Lien Lenders, the Second Lien Lenders' Agent or the Second Lien Lenders (or any one or more of them) (the "**Agents' Liens**") but provided that the Second Lien Lenders' Agent shall be relieved of its obligation to act if the First Lien Lenders' Agent takes the steps necessary to complete the transactions contemplated by the Release and Discharge Agreement on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders pursuant to the Intercreditor Agreement; (v) released the First Lien Lenders' Agent and the First Lien Lenders from any and all claims or liabilities as a result of the First Lien Lenders' Agent's execution and performance of the Release and Discharge Agreement pursuant to or in accordance with the Canadian Order; (vi) authorized and directed the Monitor to carry out the actions set forth in the Agreement; (vii) vested in the Canadian Purchaser absolute, clear, and unencumbered title in and to the Purchased Assets free and clear of all Liens and claims, with such Liens and claims attaching to the proceeds generated from the sale of the Purchased Assets; (viii) vested in the U.S. Purchaser and the Additional

U.S. Purchaser absolute, clear, and unencumbered title in and to the Purchasers' Partnership Interests in Grant US Holdings GP free and clear of all Liens and claims; (ix) released, discharged, extinguished and expunged the Agents' Liens and the First and Second Lien Lenders' Liability against the Purchasers' Partnership Interests, Grant U.S. Holdings GP and any asset, interest, right, or property, whether real, personal or mixed (collectively, the "**Collateral**") of any U.S. Applicant, other than the amounts paid by the U.S. Purchasers to acquire the Purchasers' Partnership Interests, net of applicable taxes and adjustments pursuant to the Agreement (the "**Net Partnership Interests Acquisition Proceeds**"), with any such liens and liability against the Collateral of Grant U.S. Holdings GP attaching to the Net Partnership Interests Acquisition Proceeds (which proceeds shall be distributed in accordance with Paragraph 10 below); (x) appointed and constituted the Monitor as the trustee of the Net Partnership Interests Acquisition Proceeds (the "**Partnership Proceeds Trustee**"); (xi) authorized, empowered, and directed the Monitor to initiate proceedings before this Court to obtain the U.S. Order; and (xii) granted such further and related relief as set forth in the Canadian Order.

P.     The CCAA Court found that the Agreement is commercially reasonable and is in the best interests of the Debtors and their stakeholders.

Q.     On March 31, 2010 and April 1, 2010, pursuant to the terms of the Canadian Order, the Monitor, on behalf of the Debtors, filed petitions for recognition under Chapter 15 of the Bankruptcy Code before this Court.

R.     On April 26, 2010, this Court found that the Monitor was duly appointed to act as the foreign representative of the Debtors within the meaning of Sections 101(24) and 1517(a)(2) of the Bankruptcy Code.

S.     On April 26, 2010, this Court found that the Chapter 15 Cases were properly commenced in compliance with and pursuant to Section 1504 of the Bankruptcy Code.

2167433v1

T.     On April 26, 2010, this Court found that the CCAA Proceeding was entitled to recognition as a foreign main proceeding pursuant to Sections 1502(4) and 1517(b) of the Bankruptcy Code.

U.     On April 6, 2010, this Court ordered the joint administration of these Chapter 15 cases.

V.     On April 1, 2010, pursuant to the terms of the Canadian Order, the Monitor, on behalf of the Debtors, filed the Motion seeking an order from this Court affirming and enforcing the Canadian Order and, separately, authorizing and approving the Debtors' sale, issuance, and transfer of certain assets free and clear of certain liens, claims and encumbrances.

W.     This Court has jurisdiction over the Debtors, their assets, and such contracts that affect the Debtors and their assets, including the Agreement, the Release Agreement and the Release and Discharge Agreement pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 1501, 1507, 1520, and 1521.

X.     This Court has jurisdiction to hear, determine, and grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 1501, 1507, 1520, and 1521.

Y.     Venue of these cases in this district is proper pursuant to 28 U.S.C. 1410.

Z.     Determination of the Motion and the relief requested therein is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (N), (O) and (P). The statutory predicates for the relief provided for herein are Sections 105, 363, 1501, 1507, 1520, and 1521 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014.

AA.     Timely, adequate, and sufficient notice of the Motion, the Sale Hearing, and the sale of the Acquired Interests has been provided in accordance with Section 102(1) and Bankruptcy Rules 2002, 6004 and 9014.

BB.     The Debtors and the Monitor have established that the Marketing Process conducted by certain of the Debtors, E&Y, and their advisors was fair and reasonable and reasonably calculated to obtain the highest and best price for the Debtors' assets and to maximize the return to creditors.

CC.     The Debtors and E&Y (in its capacity as the Monitor and Investment Offering Advisor) have demonstrated both: (i) good, sufficient and sound business purpose and justification; and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to Section 1520, 1521, 363, and 105 of the Bankruptcy Code, in that, among other things: (a) the immediate consummation of the Sale is necessary and appropriate to maximize the value of the Debtors' estates and (b) the Sale will provide the means for the Debtors to maximize distributions to creditors.

DD.     A reasonable opportunity to object or to be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities, including but not limited to (i) all parties who claim interests in or liens upon the Acquired Interests, (ii) all governmental taxing authorities who have, or as a result of the sale, issuance, and transfer of the Acquired Interests may have, claims, contingent or otherwise, against any Debtor, (iii) all known creditors of the Debtors, including, without limitation, all contract counterparties, (iv) governmental pension, environmental and Medicare entities, (v) the Attorney General of the State of South Carolina, (vi) the Attorney General of the United States, (vii) the Internal Revenue Service, (viii) the State of South Carolina taxing authority; (ix) any other state, local, or municipal taxing authority; and (x) all parties who have requested notice.

EE.     At the Sale Hearing, the Debtors and the Monitor jointly recommended that the Court approve, affirm and enforce the Canadian Order and, separately, approve and authorize the Debtors' sale, issuance, and transfer of the Acquired Interests as provided for in the Agreement.

8

FF.    At the Sale Hearing, the Debtors and the Monitor established that the Agreement represents the highest and best price for the Acquired Interests and provides the Debtors with the best opportunity to maximize the value of all of their assets and it is, therefore, in the best interest of the Debtors, their respective creditors, and their respective estates that the Court enter this Order, under Sections 363, 1501, 1507, 1520, 1521, and 105(a) of the Bankruptcy Code: (i) affirming and enforcing the Canadian Order and (ii) separately, (a) approving the Debtors' entry into the Agreement, the Release Agreement, and the Release and Discharge Agreement; (b) authorizing and directing the Debtors to take the steps necessary to complete the transactions contemplated by the Agreement, the Release Agreement, and the Release and Discharge Agreement; (c) approving the sale, issuance, and transfer, of the Purchasers' Partnership Interests to the U.S. Purchaser and the Additional U.S. Purchaser as provided for in the Agreement; (d) approving the entry into the Release and Discharge Agreement; (e) authorizing, empowering, and directing the First Lien Lenders' Agent (on behalf of itself and the First Lien Lenders), the First Lien Lenders' Agent (on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders, pursuant to the Intercreditor Agreement), and the Second Lien Lenders' Agent (on behalf of itself and the Second Lien Lenders) to take the steps necessary to complete the transactions contemplated by the Release and Discharge Agreement but providing that the Second Lien Lenders' Agent shall be relieved of its obligation to act if the First Lien Lenders' Agent takes the steps necessary to complete the transactions contemplated by the Release and Discharge Agreement, including without limitation, directing the release and discharge of the First and Second Lien Lenders' Liability and the Agents' Liens, on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders pursuant to the Intercreditor Agreement and this Order; (f) releasing the First Lien Lenders' Agent and the First Lien Lenders from any and all claims or liabilities as a result of the First Lien Lenders' Agent's execution and performance of the

9

Release and Discharge Agreement pursuant to or in accordance with the Canadian Order and this Order; (g) authorizing, empowering, and directing the First Lien Lenders' Agent (on behalf of itself and the First Lien Lenders), the First Lien Lenders' Agent (on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders, pursuant to the Intercreditor Agreement) and the Second Lien Lenders' Agent (on behalf of itself and the Second Lien Lenders) to execute releases of the First and Second Lien Lenders' Liability and the Agents' Liens but providing that the Second Lien Lenders' Agent shall be relieved of its obligation to act if the First Lien Lenders' Agent executes releases of the First and Second Lien Lenders' Liability and the Agents' Liens on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders pursuant to the Intercreditor Agreement and this Order; (h) approving the sale, issuance, and transfer of the Purchasers' Partnership Interests free and clear of the First and Second Lien Lenders' Liability and the Agents' Liens; (i) as provided for in Paragraph 10 of this Order, releasing and discharging the First and Second Lien Lenders' Liability as against the Purchasers' Partnership Interests and the equity interests of each U.S. Applicant (the "**U.S. Equity Interests**"), and, (j) as provided for in Paragraph 10 of this Order, releasing and discharging the Agents' Liens as against the Purchasers' Partnership Interests, the U.S. Applicants, and the Collateral of each U.S. Applicant.

GG.     The sale, issuance, and transfer of the Acquired Interests by the Debtors to the Purchasers and the consummation of the transactions described in the Agreement have been authorized and approved by the Debtors, the Monitor, the CCAA Court, the First Lien Lenders' Agent (on behalf of itself and the First Lien Lenders), the First Lien Lenders' Agent (on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders, pursuant to the Intercreditor Agreement), and the Second Lien Lenders' Agent (on behalf of itself and the Second Lien Lenders).

HH.     As provided for and contemplated by the Canadian Order, Grant U.S. Holdings GP, Southeast Properties LLC, Grant Clarendon LP, Grant Allendale LP, Grant US Sales Inc., Grant Newco LLC, and Grant Excluded GP have obtained the necessary consents and authority to sell the Acquired Interests to the Purchasers and to otherwise fulfill all of their obligations under the Agreement and this Order.

II.     Upon the issuance of this Order: (i) each of Grant U.S. Holdings GP, Southeast Properties LLC, Grant Clarendon LP, Grant Allendale LP, Grant US Sales Inc., Grant Newco LLC, and Grant Excluded GP has full power and authority to execute and deliver the Agreement, the Release Agreement, the Release and Discharge Agreement, and all other documents contemplated thereby, (ii) each of Grant U.S. Holdings GP, Southeast Properties LLC, Grant Clarendon LP, Grant Allendale LP, Grant US Sales Inc., Grant Newco LLC, and Grant Excluded GP has all the power and authority necessary to consummate the transactions contemplated by the Agreement, the Release Agreement, the Release and Discharge Agreement, and all other documents contemplated thereby, and (iii) no other consents or approvals are required.

JJ.     Upon the issuance of this Order, each of the First Lien Lenders' Agent (on behalf of itself and the First Lien Lenders), the First Lien Lenders' Agent (on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders pursuant to the Intercreditor Agreement), and the Second Lien Lenders' Agent (on behalf of itself and the Second Lien Lenders) is authorized and directed to provide the releases and discharges provided for in the Release and Discharge Agreement; provided, however, the Second Lien Lenders' Agent shall have no continuing obligation to act or liability for failing to act if the First Lien Lenders' Agent provides the releases and discharges provided for in the Release and Discharge Agreement on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders pursuant to the Intercreditor Agreement and this Order and shall have no liability as a result

11

of the First Lien Lenders' Agent's execution and performance of the Release and Discharge Agreement pursuant to or in accordance with the Canadian Order.

KK.    As a condition to their purchase and acquisition of the Acquired Interests, the Purchasers require that the Acquired Interests be sold in accordance with the terms of the Canadian Order and, separately, pursuant to an order from this Court that provides that: (i) the Purchasers' Partnership Interests are being sold, issued, and transferred free and clear of the First and Second Lien Lenders' Liability and the Agents' Liens and (ii) the First and Second Lien Lenders' Liability and the Agents' Liens be discharged, as provided for in Paragraph 10 of this Order, as against the Purchasers' Partnership Interests, the U.S. Applicants, the Collateral of each U.S. Applicant, and the U.S. Equity Interests. Without the preceding, the Purchasers would not enter into and consummate the Sale, thus adversely affecting the Debtors' estates and the Debtors' ability to maximize the value of their interests.

LL.    All applicable requirements of Section 363(f) of the Bankruptcy Code have been satisfied, and accordingly, Grant U.S. Holdings GP may sell, issue, and transfer the Purchasers' Partnership Interests pursuant to Section 363(f) of the Bankruptcy Code, free and clear of all the First and Second Lien Lenders' Liability and the Agents' Liens and all Encumbrances relating to the First Lien Credit Agreement and Second Lien Credit Agreement.

MM.    Neither E&Y nor the Debtors are affiliated with any of the Purchasers, and the Agreement was negotiated, proposed and entered into by the parties in accordance with the Initial Order without collusion, in good faith, from arm's length bargaining positions and for fair value. Accordingly, the Purchasers are good faith purchasers under Section 363(m) of the Bankruptcy Code and, as such, entitled to the protections afforded thereby.

12

NN.    Neither E&Y, in any capacity, nor any Debtor on the one hand, nor any Purchaser on the other hand, has engaged in any conduct that would cause or permit the Agreement to be avoided under Section 363(n) of the Bankruptcy Code.

OO.    In the absence of a stay, the Purchasers will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in consummating the transactions contemplated by the Agreement.  Notwithstanding Bankruptcy Rule 6004(g), this Order shall become effective immediately upon entry.

PP.    The sale, issuance, and transfer of the Purchasers' Partnership Interests contemplated by the Agreement (i) is or will be legal, valid and effective transfers of Grant U.S. Holdings GP's partnership interests to the Purchasers, (b) vest or will vest the Purchasers with all right, title and interest in and to the Purchasers' Partnership Interests free and clear of all interests, including all Liens, Claims and Encumbrances, of or in relation to the First and Second Lien Lenders' Liability or the Agents' Liens under Sections 1520, 1521, 363 and 105 of the Bankruptcy Code, and (c) will discharge all Liens, claims and encumbrances of or in relation to the First and Second Lien Lenders' Liability or the Agents' Liens against the U.S. Equity Interests, the U.S. Applicants, and the Collateral of each U.S. Applicant under Sections 1520, 1521, 363 and 105 of the Bankruptcy Code other than as specifically provided in the Agreement.

QQ.    The legal and factual basis set forth in the Motion and at the Sale Hearing establishes just cause for the relief granted herein.

RR.    All of the provisions of this Order are nonseverable and mutually dependent.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is granted to the extent provided herein.

2.    All objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3.    The Canadian Order is recognized, affirmed, and shall be enforceable pursuant to its terms.

4.    The Debtors and the Monitor are hereby authorized, pursuant to Sections 1520, 1521, 363 and 105 of the Bankruptcy Code, to conduct the Sale at Closing in accordance with the Agreement, this Order, and the Canadian Order and to sell or otherwise issue, and transfer the Purchasers' Partnership Interests as provided for in the Agreement, this Order and the Canadian Order.

5.    The Debtors are hereby authorized, empowered, and directed to enter into the Agreement, the Release Agreement, and the Release and Discharge Agreement which are hereby approved in their entirety and incorporated herein by reference, and it is further ordered that all amounts payable pursuant to further order of the CCAA Court shall be payable without the need for any application or a further order of this Court.

6.    The Debtors and the Monitor are hereby authorized and directed to take such actions necessary and appropriate to implement, the Canadian Order, the Agreement, the Release Agreement, and the Release and Discharge Agreement without the necessity of a further order of this Court as provided by the Agreement including, without limitation, (i) (a) the cancellation of the Vendors' Partnership Interests, (b) the withdrawal of Grant Forest Products Inc. and Grant Alberta Inc. as partners of Grant U.S. Holdings GP, (c) the admission of the U.S. Purchaser and Additional U.S. Purchaser as partners of Grant U.S. Holdings GP, and (d) the issuance of the Purchasers' Partnership Interests; and (ii) execution and delivery of all documents and deliverables required by the Agreement to effectuate the transactions contemplated thereby.

14

7.     The First Lien Lenders' Agent (on behalf of itself and the First Lien Lenders), the First Lien Lenders' Agent (on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders pursuant to the Intercreditor Agreement), and the Second Lien Lenders' Agent (on behalf of itself and the Second Lien Lenders) are hereby authorized and directed to (i) take the steps necessary to complete the transactions contemplated by the Release and Discharge Agreement and (ii) execute and provide evidence of the discharge and release of the First and Second Lien Lenders' Liability and the Agents' Liens against the Purchasers' Partnership Interests, the U.S. Equity Interests, the U.S. Applicants, and the Collateral of each U.S. Applicant; provided, however, the Second Lien Lenders' Agent shall be relieved of its obligation to act if the First Lien Lenders' Agent (i) takes the steps necessary to complete the transactions contemplated by the Release and Discharge Agreement and (ii) execute and provide evidence of the discharge and release of the First and Second Lien Lenders' Liability and the Agents' Liens against the Acquired Interests on behalf of the Second Lien Lenders' Agent and the Second Lien Lenders pursuant to the Intercreditor Agreement and this Order.

8.     Neither the First Lien Lenders' Agent nor the First Lien Lenders shall incur any liability or obligation of any nature or kind as a result of the First Lien Lenders' Agent execution and performance of the Release and Discharge Agreement pursuant to or in accordance with the US Order.

9.     Pursuant to Section 363(f) of the Bankruptcy Code, the Purchasers' Partnership Interests shall be sold, issued, and transferred free and clear of the First and Second Lien Lenders' Liability and the Agents' Liens.

10.     Upon Closing, the Net Partnership Interests Acquisition Proceeds shall be paid to the Partnership Proceeds Trustee in trust for the sole and exclusive benefit of the creditors of Grant U.S. Holdings GP. Upon Closing and the payment of the Net Partnership Interests Acquisition Proceeds to the Partnership Proceeds Trustee in trust for the benefit of the

2167433v1

creditors of Grant U.S. Holdings GP, the First and Second Lien Lenders' Liability and the Agents' Liens (including their indebtedness claims) against the Purchasers' Partnership Interests, the U.S. Equity Interests, the U.S. Applicants, and the Collateral of each U.S. Applicant shall be released and discharged and such First and Second Lien Lenders' Liability and the Agents' Liens (including their indebtedness claims) against Grant U.S. Holdings GP and the Collateral of Grant U.S. Holdings GP shall attach solely to the Net Partnership Interests Acquisition Proceeds, with the same priority that the holders of the First and Second Lien Lenders' Liability and the Agents' Liens (including their indebtedness claims) would have had against Grant U.S. Holdings GP and the Collateral of Grant U.S. Holdings GP if such First and Second Lien Lenders' Liability and the Agents' Liens (including their indebtedness claims) against Grant U.S. Holdings GP and the Collateral of Grant U.S. Holdings GP had not been released, discharged, extinguished and expunged as against Grant U.S. Holdings GP and the Collateral of Grant U.S. Holdings GP. In consideration for, and conditional upon its receipt of, the Net Partnership Interests Acquisition Proceeds, the Partnership Proceeds Trustee shall assume, subject to the limitations on recourse against, and the limitation of liability of, the Partnership Proceeds Trustee set forth below, all indebtedness and obligations of Grant U.S. Holdings GP to its creditors including, without limitation, the indebtedness and obligations of Grant U.S. Holdings GP related to the First and Second Lien Lenders' Liability and the Agents' Liens (including their indebtedness claims against Grant U.S. Holdings GP) (collectively, the "**Assumed Partnership Indebtedness**") and the Net Partnership Interests Acquisition Proceeds shall be subject to all security interests, charges, liens and any other encumbrances against Grant U.S. Holdings GP existing as at the time of Closing (collectively, the "**Partnership Encumbrances**") in each case only to the extent necessary to enable the holders of the Assumed Partnership Indebtedness to receive the Net Partnership Interests Acquisition Proceeds according to the

priorities of the Partnership Encumbrances and, if applicable, the priorities set forth in the Intercreditor Agreement. The Net Partnership Interests Acquisition Proceeds will be distributed, upon further Order of the CCAA Court, to the creditors entitled thereto with the same priority that the holders of the Partnership Encumbrances would have had against the Collateral of Grant U.S. Holdings GP as if the Partnership Encumbrances had not been released, discharged, extinguished and expunged as against the Collateral of Grant U.S. Holdings GP and, if applicable, pursuant to the priorities set forth in the Intercreditor Agreement. For greater certainty, (i) in no event shall there be any recourse whatsoever against: (a) the Collateral of Grant U.S. Holdings GP (other than the Net Partnership Interests Acquisition Proceeds), the Purchasers' Partnership Interests, the U.S. Equity Interests, the other U.S. Applicants, or the Collateral of any other of the U.S. Applicants or (b) the Partnership Proceeds Trustee or E&Y in any capacity (except for willful misconduct or gross negligence), and (ii) neither the Partnership Proceeds Trustee nor E&Y in any capacity shall have or be under any personal or corporate liability to any person in relation to the Partnership Encumbrances or for acting in its capacity as the Partnership Proceeds Trustee (except for willful misconduct or gross negligence), and the sole recourse that any holder of the Partnership Encumbrances shall have in relation to the Assumed Partnership Indebtedness and the Partnership Encumbrances is to the Net Partnership Interests Acquisition Proceeds. Immediately following the distribution of all of the Net Partnership Interests Acquisition Proceeds in accordance with such further Order of the CCAA Court, (i) the Monitor shall be released and discharged from its role as Partnership Proceeds Trustee and shall have no further duties or obligations arising out of its role as Partnership Proceeds Trustee and (ii) the Assumed Partnership Indebtedness shall be deemed to have been satisfied in full and all Partnership Encumbrances released and discharged.

11.     Pursuant to Sections 1501, 1507, 1520, 1521, 363 and 105(a) of the Bankruptcy Code, the First Lien Lenders, the Second Lien Lenders, and the Agents are hereby enjoined from taking any action against the Purchasers, the Purchasers' Partnership Interests, the U.S. Applicants, or the Collateral of each U.S. Applicants to recover any claim or enforce any lien, claim or encumbrance which such entity has against the Purchasers' Partnership Interests, the U.S. Applicants or the Collateral of the U.S. Applicants relating to the First and Second Lien Lenders' Liability or the Agents' Liens; provided, however, the First Lien Lenders' Agent shall not be enjoined from enforcing the rights provided to it under the Intercreditor Agreement in respect of the Second Lien Credit Agreement, the Second Lien Lenders' Agent, and the Second Lien Lenders.

12.     The Purchasers are buyers in good faith under section 363(m) of the Bankruptcy Code and upon Closing, are entitled to the protections afforded thereby. Neither the Debtors, E&Y in any capacity, nor the Purchasers have engaged in any conduct that would cause or permit the Agreement and the transactions contemplated thereby to be avoided under sections 363(m) or 363(n) of the Bankruptcy Code.

13.     The consideration provided by the Purchasers under the Agreement is fair and reasonable.

14.     The transactions consummated pursuant to this Order, the Agreement, the Release Agreement, and the Release and Discharge Agreement shall upon Closing be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold or transferred pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments,

18

secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

15.     The Purchasers are authorized upon Closing to execute, file, register or otherwise record any documents or instruments necessary to (i) complete the transactions contemplated by the Agreement, the Release Agreement, and the Release and Discharge Agreement and (ii) terminate any outstanding financing statements, fixture filings, mortgages and other documents or instruments granting or evidencing or purporting to grant or purporting to perfect the Agents' Liens or any Lien relating to the First and Second Lien Lenders' Liability with respect to the Purchasers' Partnership Interests, the U.S. Equity Interests, the U.S. Applicants, and the Collateral of each U.S. Applicant.

16.     This Court shall retain: (i) exclusive jurisdiction with regard to all issues and disputes relating to the Purchaser's Partnership Interests, the U.S. Applicants, and the Collateral of each U.S. Applicant, including, without limitation, to protect the Debtors and the Purchasers, from interference with the Sale, and to resolve any disputes related to the transactions contemplated by the Agreement or the Release and Discharge Agreement (including the implementation thereof) that relate to the Purchasers' Partnership Interests, the U.S. Applicants, and the Collateral of each U.S. Applicant and (ii) nonexclusive jurisdiction with the CCAA Court with regard to all other issues and disputes related to the Sale or arising under the Agreement, the Release Agreement, and the Release and Discharge Agreement.

17.     The provisions of this Order and the Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors, or which may be entered converting Debtors' cases from Chapter 15 to any case under Title 11 of the United States Code, and the terms and provisions of the Agreement as well as the rights and interests

19

granted pursuant to this Order and the Agreement shall continue in this or any superseding case and shall be binding upon Debtors, the Monitor and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors.

18.     To the extent, if any, anything contained in this Order conflicts with a provision in the Agreement, this Order shall govern and control.  The Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to the implementation of this Order.

19.     The failure to specifically include any particular provision of the Agreement, the Release Agreement, the Release and Discharge Agreement, or any of the documents, agreements or instruments executed in connection therewith in this Order shall not diminish or impair the efficacy of such provision, document, agreement or instrument, it being the intent of the Court by the Sale Order that the Agreement, the Release Agreement, the Release and Discharge Agreement, and each document, agreement or instrument be authorized and approved in its entirety.

20.     This Order shall be binding on all creditors (whether known or unknown) of the Debtors, the Monitor, the First Lien Lenders' Agent, the First Lien Lenders, the Second Lien Lenders' Agent, the Second Lien Lenders, the respective affiliates of any of the foregoing, and any and all successors and assigns of the foregoing.

21.     The Agreement, the Release Agreement, and the Release and Discharge Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

2167433v1

22.     The provisions of Bankruptcy Rules 6004(h) staying the effectiveness of this

Order for ten (10) days are hereby waived, and this Order shall be effective immediately upon

entry thereof.

Dated: April 26 2010
        Wilmington, Delaware

_____
THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

2167433v1