**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 15 |
| ) | |
| GRANT FOREST PRODUCTS, INC., ) | |
| et al., ) | |
| ) | Case No. 10-11132 (PJW) |
| Debtors. ) | |
| ) | |

# MEMORANDUM OPINION

John A. DiCicco
Acting Assistant Attorney General

Ari D. Kunofsky
Yonatan Gelblum
Trial Attorneys Tax Division
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, D.C.  20044

Attorneys for the United States

Rafael X. Zahralddin-Aravena
Shelley A. Kinsella
Elliott Greenleaf
1105 North Market Street
Suite 1700
Wilmington, DE 19801

Jeffrey W. Kelley
Garrett A. Nail
Troutman Sanders LLP
Bank of America Plaza
600 Peachtree Street, NE
Suite 5200
Atlanta, GA 30308-2216

Attorneys for Ernst & Young, Inc., Monitor and Foreign Representative of the Debtors

Dated: November 23, 2010

**WALSH, J.**

   This opinion is with respect to the United States' motion to reconsider and vacate the order dated May 11, 2010 that recognized and enforced a Canadian court order permitting Ernst & Young to file tax returns for two United States subsidiaries of the Canadian parent corporation, Grant Forest Products, Inc. without incurring liability therefor. (Doc. # 71)  The issues presented here are whether the order violated the Anti-Injunction Act, 26 U.S.C. § 7421(a), and whether the order was appropriate under Chapter 15 of the Bankruptcy Code, 11 U.S.C. §§ 101 <u>et seq.</u>

## Background

   Grant Forest Products, Inc. ("GFPI") and its related debtors manufacture oriented strand board, a product used in the construction business.  GFPI is headquartered in Canada and had two mills there and two mills in the United States.  On June 23, 2009, the Debtors sought bankruptcy protection in Canada, before the Ontario Superior Court of Justice (Commercial List) (the "Ontario Court"), under Canada's Companies' Creditors Arrangement Act ("CCAA").  The Ontario Court appointed Ernst & Young as monitor (the "Monitor") in that proceeding, and the Monitor commenced these proceedings under Chapter 15 of the Bankruptcy Code, 11 U.S.C. §§ 101 <u>et seq.</u>, in order to seek the assistance of this Court in effectuating GFPI's bankruptcy proceeding.  This Court granted the

3

Ontario Court recognition as a "foreign main proceeding" under 11 U.S.C. § 1517.

GFPI engaged Ernst & Young as an advisor to conduct a sale of some of its business and operations. Georgia-Pacific LLC and certain of its subsidiaries ("Georgia-Pacific") signed an agreement to purchase certain of GFPI's businesses, including the GFPI's stock interest in two United States subsidiaries (the "Subsidiaries"). Pursuant to the terms of the transaction, Georgia Pacific now owns certain of GFPI's former Canadian assets and all of the equity interests in the Subsidiaries. As part of the agreement, Georgia-Pacific required GFPI to file the United States tax returns for the Subsidiaries for the year in which the sale occurred. Those returns have been prepared by Deloitte, but they have not been signed and, pursuant to IRS regulations, GFPI could not file them until January 2011. Typically, a director or officer may sign a corporate tax return. The Ontario Court, however, foresaw the possibility that no director or officer may be available to sign the tax returns and ordered that Ernst & Young may serve as a "Filing Receiver," authorized to sign and file the tax returns without incurring any liability to the Internal Revenue Service ("IRS"). Following the closing of the sale transaction in June 2010, the Subsidiaries had no officers or directors who were related to GFPI. The Ontario Court order establishing this "Filing Receiver" procedure was made

contingent on this Court's approval, which approval was granted on May 11, 2010 (the "Order").

The United States then moved this Court to reconsider and vacate that Order, raising three arguments. First, the United States contends that the Order violated the Anti-Injunction Act, 26 U.S.C. § 7421(a), as an impermissible restraint on "the assessment or collection of any tax." The United States alternatively argues that, even if the Order did not violate the Anti-Injunction Act, the Order was not properly granted under Chapter 15 for the following two reasons: (i) the requested relief impermissibly "enjoin[ed] a police or regulatory act of a governmental unit" in violation of 11 U.S.C. § 1521(d); and (ii) the requested relief violated fundamental United States policy under 11 U.S.C. § 1506.[1]

**Discussion**[2]

I. **Anti-Injunction Act**

---

[1] The United States also raises a third argument that cooperation is not appropriate because the Ontario Court's order shielding the Monitor from potential tax liability was not a final order. The United States urges that "[c]omity is not applicable in this case because there had not been a full and fair trial or other examination of the legal issues involved." (Doc. # 109). Chapter 15, however, is not based solely on principles of comity, and § 1521 provides that, upon an order recognizing a foreign proceeding as a main or nonmain proceeding, "the court may, at the request of the foreign representative, grant any appropriate relief." 11 U.S.C. § 1521(a) (emphasis supplied). There is no requirement under § 1521(a) that there be a full and fair trial in the Ontario Court. Furthermore, there is no evidence that the Ontario Court's order was not pursuant to a full and fair trial in the Ontario Court.

[2] This Court had jurisdiction to consider the initial petition for recognition of the CCAA proceeding under 28 U.S.C. §§ 157 and 1334, and it retains jurisdiction to reconsider its recognition order and the modification thereto.

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). "The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention . . . . Nevertheless, if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and . . . the attempted collection may be enjoined if equity jurisdiction otherwise exists." Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 7 (1962).

Here, it is undisputed that the Monitor is currently not liable for the Subsidiaries' tax obligations, and it has no duty to sign and file the tax returns. The question is whether the Monitor, by assuming the task of signing and filing the tax returns, would subject itself to tax liability – either for the Subsidiaries' tax obligations or for any assessable penalties for problems with the tax returns – such that the Order would restrain the assessment or collection of taxes against the Monitor.

The United States urges that the Monitor's signature on the tax returns would obligate the Monitor to pay the Subsidiaries' taxes, contending that the duty to sign a tax return is tied to the duty to pay the tax. This argument, however, is based on a misapplication of Holywell Corp. v. Smith, in which the Supreme

6

Court explained that "[t]he Internal Revenue Code ties the duty to pay federal income taxes to the duty to make an income tax return," citing the following language from 26 U.S.C. § 6151(a): "[W]hen a return of a tax is required . . . the person required to make such return shall . . . pay such tax."  503 U.S. 47, 52 (1992).  Thus, Holywell does not say that the person who files a tax return must also pay that tax; rather, it says the person obligated to file a tax return must pay that tax.  Because the Monitor has no obligation to file the Subsidiaries' tax returns, it has not duty to pay the taxes.  Accordingly, I find that the IRS could not possibly assess and collect taxes from the Monitor, and so the Order shielding the Monitor from the Subsidiaries' tax obligations does not violate the Anti-Injunction Act.

The Anti-Injunction Act also applies to injunctions against the assessment and collection of certain penalties, as the Internal Revenue Code provides that certain "assessable penalties" fit within the definition of "tax":

> The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes. Except as otherwise provided, any reference in this title to "tax" imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this subchapter.

26 U.S.C. § 6671(a).  Of these "assessable penalties", only two are relevant in this case; however, as discussed below, neither one would apply to the Monitor.[3]

The first relevant assessable penalty is § 6679, which imposes civil liability against a foreign corporation for failure to file a tax return.  That provision, however, applies only to "any person required to file a return."  26 U.S.C. § 6679(a).  As discussed above, the Monitor has no legal duty to file tax returns for the Subsidiaries; therefore, § 6679 would not apply to the Monitor.

The second relevant assessable penalty is § 6702, dealing with frivolous tax returns.  That section provides that

> A person shall pay a penalty of $5,000 if –
> (1) Such person files what purports to be a return of a tax imposed by this title but which –
>    (A) does not contain information on which the substantial correctness of the self-assessment may be judged, [and]
>
> ***
> (2) the conduct referred to in paragraph (a) --
>    (A) is based on a position which the Secretary has identified as frivolous under subsection (c), or
>    (B) reflects a desire to delay or impede the administration of Federal tax laws.

26. U.S.C. § 6702.  Tax returns are required to be signed under penalty of perjury, 26 U.S.C. § 6065, and the failure to do so may violate the § 6702 as such failure "precludes the IRS from judging

---

[3] The list of assessable penalties are found in 26 U.S.C. §§ 6672-6725.

the 'substantial correctness' of the return because the required 'information' that the return has been verified under 'penalty of perjury' is absent." Borgeson v. United States, 757 F.2d 1071, 1073 (10th Cir. 1985); see Vaira v. C.I.R., 444 F.2d 770, 777 (3d Cir. 1971) (upholding a penalty for failure to sign a tax return).

Although there is no language in § 6702 limiting its application to persons required to file a tax return, such a limitation is implicit in this provision's language and purpose. The purpose of requiring a tax return to be verified under penalty of perjury is to serve an "important deterrent to the filing of false returns." Schneider v. United States, 594 F.Supp. 611, 613 (E.D. Mich. 1984). Applying this provision to the Monitor would not serve this purpose. If the Monitor were required to verify the tax returns under penalty of perjury, the Monitor would simply not sign the returns at all. Therefore, § 6702 applies only to the party required to file a tax return. The IRS may assess a penalty against the Subsidiaries under this provision, but it may not do so against the Monitor. The Order does not change this, and therefore is permissible under the Anti-Injunction Act.

Ultimately, the requested relief does not violate the Anti-Injunction Act because the IRS could not possibly assess or collect the Subsidiaries' taxes from the Monitor. The Monitor has no tax liability for the Subsidiaries and no legal obligation to file their tax returns. Because the Anti-Injunction Act does not

apply here, I do not need to decide the larger questions of whether (i) In re Becker's Motor Transportation, Inc., 632 F.2d 242, 246 (3d Cir. 1980), which held that bankruptcy reorganization laws do not override the Anti-Injunction Act, applies with equal force in the context of a Chapter 15 cross-border proceeding or (ii) whether the requested relief would be available under Chapter 11 of the Bankruptcy Code.

**II. Chapter 15**

Chapter 15 of the Bankruptcy Code is designed to promote cooperation between courts of the United States and courts in other countries involved in cross-border insolvency cases. 11 U.S.C. § 1501. To effect this policy goal, § 1521 provides as follows:

> Upon recognition of a foreign proceeding . . . where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief.

11 U.S.C. § 1521.

This broad power to "grant any appropriate relief" is not unrestrained, however. Section 1522 provides that a "court may grant relief under section 1519 or 1521 . . . only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522. A court is also prohibited from granting relief that would "enjoin a police or regulatory act of a governmental unit." 11 U.S.C. § 1521(d). Finally, a court may refuse to grant relief to a foreign proceeding

if such assistance "would be manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.

(a) Interests of Creditors and Other Interested Entities Are Sufficiently Protected

The Order satisfies the requirements of § 1522 as it would assist in the efficient administration of this cross-border insolvency proceeding, and it would not harm the interests of the debtors or their creditors.  Even the IRS's contingent tax claim is protected because, as discussed above, the relief restricts neither the amount of taxes the IRS can assess and collect from the Subsidiaries nor who may be liable for those taxes.  Both before and after the Order, the IRS may be able to assess and collect taxes from the Subsidiaries, their officers and directors, and, perhaps, their tax preparer.  Thus, the Order does not harm the interests of the IRS.  Accordingly, the requested relief is appropriate under § 1522.

(b) No Police or Regulatory Injunction

Section 1521(d) states that "[t]he court may not enjoin a police or regulatory act of a governmental unit."  11 U.S.C. § 1521(d).  The IRS is a governmental unit, and its ability to assess and collect lawfully owed taxes is a regulatory act.  The United States contends that this provision therefore bars the requested relief.

This argument, once again, fails because the Order does not enjoin the IRS from assessing and collecting lawfully owed

11

taxes. The IRS's regulatory actions are limited to assessing and collecting legally owed taxes. Here, the Monitor has no legal obligation to pay the taxes; therefore, the Order does not enjoin the IRS's regulatory act of assessing and collecting taxes legally owed by the Subsidiaries. Instead, the Order prevents the IRS from assessing and collecting taxes from the Monitor, a party who has no liability for those taxes.

(c) Not Manifestly Contrary to Public Policy

Congress has instructed that § 1506's public policy exception is to be interpreted narrowly, restricted to only "the most fundamental policies of the United States." In re Ephedra Prods. Liability Litigation, 349 B.R. 333, 335 (S.D.N.Y. 2006) ("Congress instructed the courts that the [public policy] exception . . . should be 'narrowly interpreted,' as [t]he word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States.'") (quoting H.R. Rep. No. 109-31(I), at 109, as reprinted in 2005 U.S.C.C.A.N. 88, 172); In re Tri-Continental Exchange, Ltd., 349 B.R. 627, 638 (Bankr. E.D. Ca. 2006).

Cases prior to the enactment of Chapter 15 have held that there is a strong public policy in favor of payment of legally required taxes. Overseas Inns S.A. P.A. v. United States, 911 F.2d 1146 (5th Cir. 1990) ("it is beyond peradventure that there is, in the United States, an inexpugnable public policy that favors payment

of lawfully owed federal income taxes.") (internal quotation marks omitted). This Court need not decide whether, under Chapter 15, tax policy is one of the "most fundamental policies of the United States" so as to trigger § 1506's exception because the Order here does not concern legally required taxes. The IRS can still collect the Subsidiaries' taxes, if any are due, but it cannot do so from a party that is not required to pay those taxes. Thus, the Order does not implicate this public policy.

### Conclusion

For the reasons discussed above, this Court will deny the United States' Motion to reconsider and vacate the Order.